1    CHRISTOPHER P. RIDOUT (SBN 143931)
      Email: christopher.ridout@zimmreed.com
2    ZIMMERMAN REED LLP
     2381 Rosecrans Ave., Suite 328
3    Manhattan Beach, CA 90245
     (877) 500-8780 Telephone
4    (877) 500-8781 Facsimile

5    DAVID N. LAKE (SBN 180775)
       Email: david@lakelawpc.com
6    LAW OFFICES OF DAVID N. LAKE, APC
     16130 Ventura Boulevard, Suite 650
7    Encino, California 91436
      (818) 788-5100 Telephone
8     (818) 479-9990 Facsimile

9    *Attorneys for Plaintiffs and*
     *all others similarly situated*
10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 13  INGRID PHILLIPS and DAVID PHILLIPS, individually and on behalf of all others similarly situated, | CASE NO.: 8:18-CV-01015 |
| 15          Plaintiff, | CLASS ACTION COMPLAINT FOR: |
| 16     vs. | |
| 17  BANK OF NEW YORK MELLON, TRUSTEE OF THE CWALT, INC. ALTERNATIVE LOAN TRUST 2005 J-3 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005-J3SECURITIZED TRUST; BAYVIEW LOAN SERVICING, LLC; DITECH FINANICAL, LLC, and DOES 1-10, | 1. Violation of Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 *et seq.*) |
| | 2. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) (HBOR) |
| | 3. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) (Rosenthal Act) |
| 22          Defendants. | 4. Violation of Homeowner Bill of Rights (Cal. Civ. Code § 2920 *et seq.*) |
| 23 | 5. To Set Aside Notices of Default as Void |
| 24 | 6. Financial Elder Abuse |
| 25 | 7. Breach of Contract |
| 26 | (Jury Trial Demanded) |

27

28

COMPLAINT (CLASS ACTION)

Plaintiffs Ingrid Phillips and David Phillips (together, "Plaintiffs") bring this Complaint against Defendants Bank of New York Mellon ("BONY"), as trustee for the CWALT, Inc. Alternative Loan Trust 2005-J3 Mortgage Pass Through Certificates, Series 2005-J3 ("CWALT Trust"), Ditech Financial, LLC ("Ditech") and Bayview Loan Servicing, LLC ("Bayview") (collectively, "Defendants"), individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and on information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.     The CWALT Trust holds itself out as the owner of the Promissory Notes underlying Plaintiffs and the Class members' residential mortgages, and the holder of the beneficial interest under their deeds of trust. On the surface, the CWALT Trust obtained this position in Fall 2004, when an entity known as Virtualbank, a division of Lydian Private Bank ("Virtualbank"), purportedly executed an assignment of the Note and Deed of Trust (the "Assignment") for a large tranche of residential mortgages to Defendant Bank of New York Mellon ("BONY"), as trustee for the CWALT Trust.

2.     Defendant CWALT Trust, through its agents Defendant Ditech and Defendant Bayview, has been servicing the loans and billing Plaintiffs and the other Class members for mortgage payments and other charges it claims are due and owing to the CWALT Trust by virtue of the their purported ownership interest in said loans. Defendants have also caused to be recorded Notices of Default (NOD's) on Plaintiffs and on information and belief Class members' properties based upon these same alleged ownership interests. In some instances, Defendants have even foreclosed on certain properties based on alleged default.

3.     However, in truth and actuality, the CWALT Trust is neither the owner of the underlying promissory notes nor holder of the beneficial interest under Plaintiffs' or the Class members' deeds of trust.  This is for a very simple reason – the promissory notes and deeds of trust, and accordingly all beneficial interests under such

instruments, were never transferred to the CWALT Trust, which on Plaintiffs' information and belief did not exist on the date of the alleged transfers and indeed was not even registered with the SEC until April 2005, almost five months after the purported assignment of Plaintiffs' loan.  In addition, the Assignments of the loans were not recorded until January 2014 even though the party purportedly requesting the recording of the assignment, Virtualbank, had been shut down by the Office of the Comptroller of the Currency years beforehand, in or around August 19, 2011.

4.    This is **<u>not</u>** a case of so-called "tardy" transfers where the trust recipient may have the ability at some point to accept the assignments even though the stated window for doing so had closed by the time the assignments were allegedly done (sometimes called "voidable" transfers).  Rather, this is a case of **<u>void</u>** transfers that are legally incapable of cure because the entity purportedly receiving them (CWALT Trust) did not even exist at the time of the alleged assignments and, further, did not come into existence until long after the alleged transfers.

5.    As such, CWALT Trust was factually, practically, fundamentally and most importantly legally incapable of accepting these promissory notes and deeds of trust, and was further incapable of taking any action, either directly or through its agents, with respect to these promissory notes and deeds of trust, either in terms of collection of any debts allegedly due thereunder or initiating any foreclosure based on any alleged default in reference to said loans.

6.    Given that Plaintiffs and the other Class members' mortgages were never legally transferred to or became legally owned by the CWALT Trust, BONY, Ditech and Bayview, Plaintiffs and the Class owed no debt to Defendants. Defendants, consequently, were masquerading as the legal owners of Plaintiffs and the Class members loans and, in this unauthorized role and under color of authority and rights that did not in fact exist, attempted to and did in fact collect debts from them, such acts constituting unequivocal violations of California's Rosenthal Fair Debt Collection

Practices Act ("Rosenthal Act") and provisions of the federal Fair Debt Collection Practices Act ("FDCPA").

7.    Had Defendants looked at competent and reliable evidence (including but not limited to a calendar), they would have quickly realized that neither the CWALT Trust nor BONY was the legal owner of the promissory notes or the holder of the beneficial interest under Plaintiffs' or the Class members' deeds of trust.    Had Defendants done this, they would have quickly realized their efforts to collect these debts were truly baseless and not just a per se violation of the Rosenthal Act, but unlawful, unfair, and fraudulent acts in violation of the Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200 *et seq.*

8.    Additionally, despite their lacking this competent and reliable evidence of their ownership interest in Plaintiffs' and other class members' loans, Defendants nevertheless improperly recorded Notices of Default on Plaintiffs and, on information and belief, the class members homes on behalf of the CWALT Trust. They also in certain instances, on Plaintiffs' information and belief, foreclosed on certain homes. These actions were in violation of Plaintiffs' and class members rights under Civil Code § 2924. 17(b) and related code sections.

9.    Plaintiffs also have individualized claims against these defendants based on the improper recording and maintenance of a Notice of Default on their property, and on Ditech's breach of the contract to provide Plaintiffs a permanent loan modification based on the terms represented in the initial Trial Payment Plan document. Indeed, Plaintiffs, who because of their age are elders under California law, were the victims of financial elder abuse perpetrated upon them in the form of a "bait and switch" by defendant Ditech in connection with the Trial Period Plan and the subsequent permanent loan modification containing materially different terms than those they had been promised, which Plaintiffs had no real choice but to accept to avoid losing their home.

**PARTIES**

10.    Plaintiffs Ingrid and David Phillips ("Plaintiffs") are, and at all times mentioned herein were, individuals residing in Orange County, California.  Plaintiffs are the titleholders to the real property located at 24811 Bent Tree Lane, Lake Forest, CA 92630 (the "Real Property"), property that is the subject of a mortgage loan serviced by Bayview, and of which Defendant CWALT is the purported beneficiary under the loan documents.  Plaintiffs are both over the age of 65 and were at all times relevant hereto over the age of 65.

11.    Defendant The Bank of New York Mellon ("BONY") fka The Bank of New York acting as trustee for the CWALT, Inc. Alternative Loan Trust 2005-J3 Mortgage Pass Through Certificates, Series 2005-J3 ("CWALT Trust"), which claims to hold a security interest in Plaintiffs' real property and is a bank organized under the laws of the State of New York.  On information and belief, Defendant BONY is, and at all times mentioned herein was, doing business in Orange County, California. Defendant BONY is registered to do business in California and does business in this District.

12.    Defendant Ditech Financial LLC ("Ditech") is a Delaware limited liability company with its principal place of business at 1100 Landmark Towers 345 St. Peter Street, Saint Paul, Minnesota 55102.   Defendant Ditech is registered to do business in California and does business in this District.  Plaintiffs' and the Class members' mortgage loans were serviced by Ditech prior to being serviced by defendant Bayview Loan Servicing, LLC.  Ditech, at all times relevant hereto, was employed by and acting at the request and on behalf of BONY, and under the instruction and direction of BONY.

13.    Defendant Bayview Loan Servicing, LLC ("Bayview") is a Delaware limited liability company with its principal place of business at 4425 Ponce de Leon Blvd., 5th Floor, Coral Gables, FL 33146.  Bayview began servicing Plaintiffs' and the Class members' loans for BONY in or around September 1, 2017.  Defendant Bayview

is registered to do business in California and does business in this District.  Plaintiffs'
and the Class members' mortgage loans were serviced by Bayview after being serviced
by defendant Ditech.  Bayview, at all times relevant hereto, was employed by and
acting at the request and on behalf of BONY, and under the instruction and direction of
BONY.

14.    Plaintiffs do not know the true names and capacities of the defendants
sued herein as DOES 1 through 10 ("DOE Defendants"), inclusive, and therefore sue
said DOE Defendants by fictitious names.  Plaintiffs are informed and believe and
based thereon allege that each of the DOE Defendants is contractually, strictly,
negligently, intentionally, vicariously liable and/or otherwise legally responsible in
some manner for the acts and omissions described herein.  Plaintiffs will amend this
Complaint to set forth the true names and capacities of each DOE Defendant when the
same are ascertained.

15.    Plaintiffs are informed and believe, and based thereon allege, that
Defendants and DOE Defendants 1 through 10, inclusive, and each of them, are and at
all material times have been, the agents, servants or employees of each other,
purporting to act within the scope of said agency, service or employment in performing
the acts and omitting to act as averred herein.  Each of the Defendants named herein
are believed to, and are alleged to, have been acting in concert with, as employee,
agent, co-conspirator or member of a joint venture of, each of the other Defendants,
and are therefore alleged to be jointly and severally liable for the claims set forth
herein, except as otherwise alleged.

## JURISDICTION AND VENUE

16.    This Court has original jurisdiction over this action pursuant to the Class
Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one member of
the Class is of diverse citizenship from Defendants, there are more than 100 Class
Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of
interests and costs.

17.    This Court has personal jurisdiction over Defendants because Defendants conduct business in the State of California, a substantial portion of the wrongdoing alleged by Plaintiff occurred in the State of California and this District, Defendants have sufficient minimum contacts with and/or otherwise has purposefully availed themselves of the markets of the State of California and this District such that it is fair and just for Defendants to adjudicate this dispute in this District.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in this District and, as a corporation subject to personal jurisdiction in this District, Defendant conducts business in this District.

## FACTUAL ALLEGATIONS

### A.    Allegations Common to the Virtualbank Loan Tranche

19.    On or about September 21, 2004, Plaintiff entered into a residential mortgage loan transaction with Virtualbank consisting of a Promissory Note (the "Note") and a Deed of Trust ("Deed of Trust") secured by the real property located at 24811 Bent Tree Lane, Lake Forest, CA 92630 (the "Loan").  The holder of the Note was Virtualbank.

20.    On November 2, 2004, Virtualbank purportedly executed an Assignment of the Deed of Trust and the Promissory Note (collectively "Assignment") to "The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificate holders of the CWALT, Inc. Alternative Loan Trust 2005-J3 Mortgage Pass Through certificates, Series 2005-J3". A copy of this Assignment is attached as Ex. "A". By information and belief, Plaintiffs' mortgage was part of a large tranche of residential mortgages that were purportedly transferred from Virtualbank to the CWALT Trust by way of BONY at or around this time.

21.    The purported transfers were, however, factually impossible. First, while The Bank of New York did exist in November 2004, The Bank of New York *Mellon* did not, as the merger which created The Bank of New York Mellon did not occur until

July 2007. As such, it was impossible for The Bank of New York Mellon to be the
trustee for the CWALT Trust as of the date of the purported Assignment.

22.    Additionally, upon Plaintiffs' information and belief, based on the
Pooling and Service Agreement for the CWALT Trust filed with the Securities and
Exchange Commission ("SEC") the CWALT Trust did not come into existence until
on or about March 1, 2005. Indeed, the effective registration date with the SEC for the
CWALT Trust was April 1, 2005. Based on this the attempted transfer into the
CWALT Trust in November 2004 was impossible and thus void.

23.    Further underscoring the impossibility of the purported transfer, a
document attached as Ex. A to, and made part of, the recorded Assignment of
Plaintiffs' mortgage says on its face that it was "Printed on 5/13/2013 3:10:05 PM",
which is nine years *after* the document was allegedly executed.  As such, the document
could not have been part of the Assignment purportedly executed in November 2004,
rendering the veracity and reliability of said Assignment suspect.  Notably, although all
other information on the Assignment was typed, the name and address of the assignee
were handwritten on the Assignment, suggesting that this information was not in fact
included on the original assignment but was likely added at some later date by
Defendants in a misguided, ineffectual, and fraudulent attempt to create a chain of title
in support of a non-existent legal interest in the Promissory Note.

24.    Defendants' efforts to literally revise the loan's history indicates that they
were aware that the transfer of Plaintiffs' loan along with the tranche of Virtualbank
mortgages was invalid. However, Defendants continued to hold themselves out as the
legal owners of the mortgages at issue, with the right to service such loans and to
collect on them.

25.    Further establishing the impossibility that Plaintiffs and Class members
loans could have been legally transferred into the CWALT Trust in November 2004 is
the lack of a full and complete endorsement chain of the Promissory Note from
Virtualbank to the CWALT Trust. At a minimum, this would have necessitated a valid

endorsement of the Promissory Note from Virtualbank to CWALT, Inc., who according to the SEC registration statements was the "depositor" of loans into the CWALT Trust.   This would in turn need to be followed by an endorsement from CWALT, Inc. to the trustee of the CWALT Trust who was purportedly the Bank of New York Mellon. On Plaintiffs' information and belief, based upon documents provided to Plaintiffs by their current loan servicer, Bayview Loan Servicing LLP, pursuant to a RESPA 12 USC 2605 Qualified Written Request for Information in or around January 2018, none of these required endorsements of the Promissory Note occurred.

26.   On Plaintiffs' information and belief, Lydian Private Bank, of which Virtualbank was a subsidiary, was closed by the Office of the Comptroller of the Currency in or around August 19, 2011, and thus ceased to exist.

27.   Even though it had ceased to exist several years earlier, on January 10, 2014, First American National Default Title, purportedly at the request and direction of Virtualbank, recorded the supposed assignment of Plaintiffs' Promissory Note and Deed of Trust to The Bank of New York Mellon FKA The Bank of New York, as trustee for the certificate holders of the CWALT, Inc. Alternative Loan Trust 2005-J3 Mortgage Pass Through certificates, Series 2005-J3. It was impossible for Virtual Bank to have directed the recording of the assignment at this time as it had ceased to exist several years earlier.

28.   Between the inception of Plaintiff's loan and the present time, various parties including Countrywide Home Loans, Inc., BAC Home Loans Servicing LP, Residential Credit Solutions, Inc., Ditech Financial LLC, and Bayview Loan Servicing, LLC, represented themselves as loan servicers of Plaintiffs' loan and sought to collect (and did collect) payments from the Plaintiffs on behalf of the CWALT Trust.

29.   On Plaintiffs' information and belief, between the inception of class members loans and the present time, various parties including but not limited to Countrywide Home Loans, Inc., BAC Home Loans Servicing LP, Residential Credit

Solutions, Inc., Ditech Financial LLC, Bayview Loan Servicing, LLC, and certain of the Doe defendants represented themselves as loan servicers on class members loans and sought to collect (and did collect) payments from class members on behalf of the CWALT Trust.

30.     On Plaintiffs' information and belief, upon each transfer of servicing Plaintiffs' and class members loan files (including but not limited to all chain of title documents, all alleged ownership information, all loan servicing records, all loan payment histories, and all foreclosure related filings) were moved into the possession of each subsequent loan servicer who had actual or constructive knowledge of the contents.

**B.     Additional Allegations Specific to Plaintiffs' Loan**

31.     On February 27, 2014 First American Title Insurance Company on behalf of Residential Credit Solutions, Inc., the then current loan servicer of Plaintiff's loan, recorded a Notice of Default and Election to Sell Under Deed of Trust, doing so at the direction of and under the instruction of the CWALT Trust. A copy of this Notice of Default is attached as Ex. "B".

32.     On June 23, 2014, First American Title Insurance Company recorded a Notice of Trustee's Sale on Plaintiffs' property with the Orange County Recorder's Office, instrument number 2014246628, presumably at the direction of the servicer Residential Credit Solutions, Inc. on behalf of the CWALT Trust.   The Notice of Sale set a sale date for July 17, 2014.

33.     On July 30, 2015, another Notice of Trustee's Sale was recorded against Plaintiffs' home by First American Title Insurance Company, instrument number 2015396911, again presumably at the direction of Residential Credit Solutions, Inc. on behalf of the CWALT Trust. This Notice of Sale set a sale date for August 27, 2015.

34.     Between August 2014 and April 2016 Defendants aggressively sought to foreclose on Plaintiffs' home. Indeed, in this time period alone approximately 18 trustee's sale dates of Plaintiffs' home were scheduled and then postponed.

35.     Residential Credit Solutions, Inc. transferred servicing rights of the loan to Ditech in March 2016.  On or about April 8, 2016, Ditech notified Plaintiffs that they were in fact eligible for a loan modification. Ditech proposed a trial period plan ("TPP") requiring Plaintiffs to make three payments of $1,168.77 each by May 1, June 1 and July 1, 2016, after which the loan modification would become permanent. In another letter to Plaintiffs dated April 8, 2016, Ditech informed Plaintiffs that their permanent modification would start with an interest rate of 2%, and that the loan would be amortized over 480 months (40 years) with monthly payments of $752.08. A copy of the offer is attached as Ex. "C".

36.     As Plaintiff Ingrid Phillips had a pending Chapter 13 Bankruptcy proceeding at the time, Ditech told the Plaintiffs in an April 12, 2016 telephone call that for the permanent loan modification to take effect it would require the approval of the Bankruptcy Judge, and that Ingrid's bankruptcy petition would also have to be dismissed. Plaintiffs were also told that they would receive their final loan modification agreement once the three trial payments had been made, and that other than a potentially slight difference in the remaining unpaid principal balance and minimal legal fees, the permanent agreement's terms would be consistent with and reflect the terms set forth in the TPP and their earlier discussions.

37.     The next day, April 13, 2016, Ditech confirmed in another phone call with the Plaintiffs the necessity of the Bankruptcy Court approval of the loan modification. Plaintiffs were also advised that it would take 30 to 60 days for the final permanent modification paperwork to be received.

38.     In reliance upon Ditech's representations, Plaintiffs obtained the necessary Court approval, and dismissed Ingrid's Chapter 13 case on April 14, 2016.

39.     On or about April 26, 2016, Plaintiffs had another telephone conversation with Ditech inquiring why a foreclosure sale remained scheduled for May 20, 2016 when a TPP had already been entered into. Plaintiffs were told that the sale could go

forward at any time because Plaintiffs no longer had the protection of an active bankruptcy petition.

40.     Plaintiffs made their first required payment under the TPP (the May 1, 2016 payment) on April 27, 2016 and then made each of the remaining two TPP payments in full and on time as required. Despite this, Ditech did not provide the permanent modification documentation to the Plaintiffs, nor did it advise them why it was not forthcoming.  Concerned they would lose this opportunity for mortgage relief, Plaintiffs continued to make payments to Ditech as had been agreed to under the TPP, sending checks in the amount of $1,168.77 for the ensuing months while they awaited the permanent modification paperwork that had been promised.

41.     Eventually Ditech did provide the permanent loan modification agreement, however, its terms did not match the terms of the original TPP. Rather, it was materially different than what had been presented to them before and which had provided the basis for their advising the Bankruptcy Court that a loan modification had occurred as well as requesting dismissal of Ingrid's Chapter 13 petition. Instead of amortizing the loan over 480 months (40 years) as represented, the new agreement reduced the amortization period to just 19 years, had a higher principal balance and called for a large balloon payment in year 19. A copy of the revised permanent modification agreement sent to Plaintiffs is attached as Ex. "D".

42.     Plaintiffs repeatedly sought without success to have Ditech explain the changes as well as have it honor the original terms proposed and performed by Plaintiffs. Their frustrations and fears mounting, deeply concerned that Ditech would withdraw the permanent loan modification and foreclose based upon its past aggressiveness in setting foreclosure sale dates, Plaintiffs felt they had a "Hobson's choice," i.e. either possibly lose their home through foreclosure or accept the permanent modification agreement containing different less advantageous terms. Needing a respite from the uncertainty, they reluctantly executed the permanent modification paperwork as presented to them.

## CLASS ALLEGATIONS

43.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant to the provisions of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  Plaintiffs seek to represent a class initially defined as:

> All California residents who are the borrowers/trustors under Deed of Trusts of which the beneficial interest was purportedly held by The Bank of New York Mellon As Trustee For The CWALT, Inc. Alternative Loan Trust 2005-J3 Mortgage Pass Through Certificates, Series 2005-J3 and whose loans were or are being serviced by either Ditech Financial LLC or Bayview Loan Servicing, LLC (the "Class").

44.    The "Class Period" starts on June 1, 2014, or the earliest date allowed by the applicable statute of limitations, and continues through the present and the date of judgment.  Specifically excluded from the Class are: (a) any officers, directors, or employees of Defendants; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

45.    Plaintiffs reserve the right to modify, expand, or amend the above Class definition or seek certification of a class that is defined differently than above before any court determines whether certification is appropriate following discovery.

46.    *Numerosity*.  Members of the Class are so numerous that joinder of all members is impracticable.  While the number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believes that the Class numbers at least in the thousands.

47.    *Ascertainability*.  The community of interest among the Class members in the litigation is well defined and the proposed Class is ascertainable from objective criteria.  The identities of Class members can be obtained from Defendants' business records.  Class members can be notified of the pendency of Plaintiffs' Complaint by

mail or published notice.  If necessary to preserve the case as a class action, the Court can redefine the Class and/or create subclasses.

48.     ***Commonality and Predominance***.  There is a well-defined community of interest in the questions of law and fact affecting the parties to be represented in this action.  Common questions of law and fact that exist as to all members of the Class and predominate over any questions affecting only individual members, include, but are not limited to:

(a)     Whether Defendants violated the Rosenthal Act;

(b)     Whether engaged in unlawful, fraudulent or unfair business practices as prohibited by California's Unfair Competition laws;

(c)     Whether Defendants violated the California Homeowner Bill of Rights, California Civil Code Sections 2924.6, 2924.12, and 2924.17 by recording or causing to be recorded a notice of default when they were not the legal holder of the beneficial interest;

(d)     Whether notices of default recorded against Plaintiffs' and the Class members properties should be deemed void and set aside;

(e)     Whether Plaintiffs' and the Class members are entitled to injunctive relief;

(f)     Whether Plaintiffs and Class members are entitled to damages and/or restitution and the proper measure of that loss; and

(g)     The appropriate Class-wide measure of damages.

49.     ***Typicality***.  Plaintiffs are a member of the Class and their claims are typical of the claims of members of the Class.  Typical of members of the Class, the beneficial interests under their promissory note and deed of trust were purportedly assigned to defendant CWALT and serviced by defendant Bayview who collected payments from Plaintiffs even though they had no right to do so.  Plaintiffs and Class members each sustained, and will continue to sustain, damages arising from Defendants' wrongful conduct, as alleged more fully herein. Plaintiffs' claims are founded on the same legal theories as those of the Class.

50.    ***Adequacy of Representation***.  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class members and because Plaintiffs have retained counsel competent and experienced in complex class action and consumer litigation, including substantial experience in the types of claims alleged in this Complaint.  Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

51.    ***Declaratory and Injunctive Relief***.  Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class.

52.    ***Superiority of Class Adjudication***.  The certification of a class in this action is superior to the litigation of a multitude of cases by members of the Class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.  Moreover, there are Class members who are unlikely to join or bring an action due to, among other reasons, their reluctance to sue Defendants and/or their inability to afford a separate action.  Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the Class members in relation to the benefits received.  The damages, restitution, and other potential recovery for each individual member of the Class are modest, relative to the substantial burden and expense of individual prosecution of these claims.  Given the amount of the individual Class members' claims, few, if any, Class members could afford to seek legal redress individually for the wrongs complained of herein.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

53.    In the alternative, the above-referenced Class may be certified because:

a.    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendants;

b.    The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the class who are not parties to the adjudications, or which would substantially impair or impede the ability of other Class members to protect their interests; and,

c.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class.

## **FIRST CLAIM FOR RELIEF**

(Violation of Rosenthal Fair Debt Collection Practices Act)

(Against All Defendants and Certain Doe Defendants)

54.    Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

55.    Plaintiffs bring this claim individually and on behalf of the Class against Defendants BONY, Ditech and Bayview.

56.    California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") prohibits creditors and debt collectors from, among other things, making false, deceptive, or misleading representations in an effort to collect a debt.  Cal. Civ. Code Section 1788 *et. seq.*

57.    Plaintiffs and all other Class members are "debtor[s]" as that term is defined by California Civil Code Section 1788.2(h).  Defendants BONY, Ditech and Bayview are "debt collectors" as that term is defined in California Civil Code Section 1788.2(c) because they regularly sent or directed to be sent mortgage bills and other

notices seeking to collect money from Plaintiffs and all other Class members and acted as the servicer(s) of Plaintiffs' and all other Class members' mortgage loans.

58.    California Civil Code Section 1788.17 provides that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."  Cal. Civ. Code § 1788.17.  Thus, the Rosenthal Act incorporates the provisions of the federal Fair Debt Collection Practices Act (hereinafter "FDCPA") and a plaintiff may state a claim for violation of the Rosenthal Act by showing that a defendant violated any of several provisions of the FDCPA.

59.    Section 1692e of the FDCPA provides that a debt collector may not use any "false, deceptive, or misleading representation or means in connection with the collection of any debt including: (2) The false representation of (A) the character, amount or legal status of any debt…."   15 U.S.C. § 1692e(2)(A).  Section 1692e(10) further provides that "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt..." is conduct in violation of that Section. *Id.* at § 1692e(10).

60.    As alleged herein, the CWALT Trust does not own the Promissory Notes and does not hold the beneficial interest under Plaintiffs' or the Class members' Deeds of Trust securing payment of such Promissory Notes.  These requisites of ownership were never transferred to either the CWALT Trust or to Bank of New York Mellon as trustee for said trust because it did not exist at the time of the alleged assignments and did not come into existence until long after the alleged transfers.  Further, the purported recorded Assignment occurring in 2014 was void and invalid because Virtualbank had ceased to exist as an entity several years prior to the recorded Assignment.

61.    Because the purported transfers and assignments of the beneficial interest under the deeds of trust are void, Plaintiffs' and other Class members' mortgages never made it to CWALT Trust and, as a result, BONY did not have the authority or rights to

act with respect to Plaintiffs' or the other class members' mortgages. This lack of authority on the part of BONY extends to BONY's agents, Ditech and Bayview, who were acting at BONY's direction and as its agent to collect payments from Plaintiffs and the other Class members on debts which BONY had no right to collect.

62.   Without the ability to establish their legal right to collect payments, Defendants have engaged in debt collection activities in violation of the Rosenthal Act, California Civil Code Section 1788.10 *et seq*., and by implication, the FDCPA, by, among other things: a) misstating the character, amount or legal status of the debt they have collected or sought to collect from Plaintiffs; b) threatening to take or in fact taking actions that cannot be legally taken given their inability to establish their authority to do so; and c) using false representations or deceptive means (representing they had standing to take the actions they were taking when the rights they seek to enforce were not assigned to them) to collect or attempt to collect the debt from Plaintiffs and Class members.

63.   As alleged herein Defendants BONY, Ditech and Bayview falsely represented the character and amount of debts to the Plaintiff and Class members and used false representations or deceptive means to collect or attempt to collect those debts.

64.   Defendants BONY, Ditech and Bayview's acts as described above were done willfully and knowingly within the meaning of California Civil Code Section 1788.30(b).  On information and belief, Defendants BONY, Ditech and Bayview knew they did not have the documentation necessary and required to establish their right to collect payments from Plaintiff and Class members, yet they continued to do so as though they did.

65.   The payments demanded by Defendants BONY, Ditech and Bayview on the mortgage purportedly owed by Plaintiffs and Class members are "debt[s]" within the meaning of California Civil Code Section 1788.2(d), because they are "money,

property or their equivalent which [are] due or owing or alleged to be due or owing from a natural person to another person."

66.    As a result of Defendants BONY, Ditech and Bayview's actions herein, Plaintiffs and other members of the Class have been damaged and Plaintiffs, individually and on behalf of the Class, seeks all available relief under the California Rosenthal Fair Debt Collection Practices Act.  Pursuant to California Civil Code Section 1788.17, Plaintiffs are entitled to recover actual damages sustained because of Defendants' violations of the Rosenthal Act, which incorporates the FDCPA.  Such damages include, without limitation, monetary losses and damages.  Additionally, because Defendants BONY, Ditech and Bayview's violations of the Rosenthal Act were committed willingly and knowingly, as the named plaintiff, Plaintiffs are entitled to recover statutory damages in the amount of $1,000 and, all other Class members are entitled to  receive, as to each Defendant, the lesser of $500,000 or 1 per centum of each Defendants' net worth.  *See* Cal. Civ. Code § 1788.17 and 15 U.S.C. 1692k(a)-(c).

67.    Pursuant to California Civil Code Section 1788.17 and Section 1629k of Title 15 of the United States Code, Plaintiff is entitled to recover all attorneys' fees, costs, and expenses incurred in the bringing of this action.

## **SECOND CLAIM FOR RELIEF**

(Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* –

"Unlawful Prong" Only)

(Against All Defendants and Certain Doe Defendants)

68.    Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

69.    Plaintiffs bring this claim individually and on behalf of the Class pursuant to Section 17200 *et seq.* of the Business & Professions Code, the Unfair Competition Law ("UCL").

70.    California's UCL prohibits unfair competition, which includes any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200 *et seq.*

71.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

72.    As described above, Defendants committed, and continue to commit, "unlawful" business acts or practices by, among other things, violating the Rosenthal Act as well as the provisions of the Homeowners Bill of Rights, specifically Civil Code Section 2924.17.

73.    Plaintiff and the Class members have suffered injury in fact and suffered monetary loss as a direct result of Defendants' conduct described herein. Specifically, Plaintiff and Class members have paid money to Defendants under the guise of Defendants' right to collect debts from them when, in fact, Defendants had no such right because the notes and deeds of trust were never transferred to the CWALT Trust which, at the time of the alleged transfer, did not even exist.

74.    As a result of Defendants' unfair acts and practices, Plaintiffs, Class members, and the general public have suffered injury in fact and have lost money or property. These violations have unjustly enriched Defendants at the expense of Plaintiffs and other Class members.

75.    Under Section 17203 of the Business & Professions Code, Plaintiffs and the other members of the Class are entitled to (a) restitution and disgorgement of all unjustly retained monies; (b) equitable relief; (c) pre- and post-judgment interest at the highest rate allowable by law; (d) payment of attorneys' fees and costs pursuant to Section 1021.5 of the California Code of Civil Procedure; and (e) any other relief this Court deems proper.

## **THIRD CLAIM FOR RELIEF**

(Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*)

(Against All Defendants and Certain Doe Defendants)

76.    Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

77.    Plaintiffs bring this claim individually and on behalf of the Class pursuant to Section 17200 *et seq.* of the Business & Professions Code, the Unfair Competition Law ("UCL").

78.    California's UCL prohibits unfair competition, which includes any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200 *et seq.*

79.    A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

80.    Defendants committed, and continue to commit, "unfair" business acts or practices by, among other things:

(a)    engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to the Plaintiffs and the members of the Class;

(b)    engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the Class; and

(c)    engaging in conduct that undermines or violates the spirit or intent of the laws that this Complaint invokes.

81.    Specifically, Defendants BONY, Ditech and Bayview engaged in unfair business acts or practices in violation of the UCL by representing themselves as having the legal right to collect payments from Plaintiffs and other members of the Class and collecting monies from them even though the debts were not owned by them and they did not have the right to receive any payments from Plaintiffs and other members of

the Class. As alleged herein, Defendants falsely represented the character and amount of debts to the Plaintiffs and Class members and used false representations or deceptive means to collect those debts in that they had no legal right to collect any debt on behalf of the purported owner of the underlying Note or Deed of Trust on Plaintiffs' and Class members' homes.

82.    These acts and practices are unfair because they caused Plaintiffs and other reasonable home owning consumers to falsely believe that Defendants were owed the debts or were the proper party to collect debts on behalf of or as the owner of the beneficial interest under the Deeds of Trust.  As a result, home owning consumers, including Plaintiffs, reasonably perceived that Defendants BONY, Ditech and Bayview were able to legally collect on the homeowners' mortgage debt.  This perception has induced reasonable individuals, including Plaintiffs, to interact with Defendants in a debt collector capacity, including by making payments.

83.    The gravity of harm to members of the Class resulting from these unfair acts and practices outweighed any business justifications for Defendants' deceptive acts and practices. By committing the acts and practices alleged herein, Defendants engaged in unfair business practices within the meaning of the UCL. Such acts and violations have not abated and will continue to occur unless enjoined.

84.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

85.    Defendants BONY, Ditech and Bayview's misrepresentations regarding their rights, standing and authority, as set forth above, were false, misleading, and likely to deceive the public within the meaning of California Business and Professions Code section 17200.

86.    Defendants' misrepresentations were made with knowledge of their effect and were done to induce Plaintiffs and other Class members to believe they owed Defendants monies when they did not because they did not have the right, standing or authority to collect.

87.    Plaintiffs and other Class members reasonably relied and reasonably expected that Defendants would comply with the law, to deal honestly with them and to comply with the provisions of the Rosenthal Act.

88.    On information and belief, and as alleged herein, Defendants BONY, Ditech and Bayview knew or had reason to know that documents and information, including but not limited to the assignments of deed of trust and transfers of the promissory notes, were not valid to establish their legal right to collect payments from Plaintiffs and other members of the Class.   Accordingly, Defendants cannot establish their legal right to collect payments from Plaintiffs and other Class members.

89.    Without the ability to establish their legal right to collect payments or foreclose, Defendants have engaged in debt collection activities in violation of the Rosenthal Act, California Civil Code Section 1788.10 *et seq*., and by implication, the FDCPA, by, among other things: a) misstating the character, amount or legal status of the debt they collected or sought to collect from Plaintiffs; b) threatening to take or taking action that cannot be legally taken given their inability to establish their authority to do so; and c) using false representations or deceptive means (representing they had standing to take the actions they were taking when the rights they seek to enforce were not assigned to them) to collect or attempt to collect the debt from Plaintiffs and Class members.

90.    Plaintiffs and the Class members have suffered injury in fact and suffered monetary loss as a direct result of Defendants' conduct described herein.   Specifically, Plaintiffs and Class members have paid money to Defendants which they had no obligation to pay Defendants because Defendants did not have any right to collect these monies.

91.    As a result of Defendants' unfair acts and practices, Plaintiffs and the Class members have suffered injury in fact and have lost money or property.   These violations have unjustly enriched Defendants at the expense of Plaintiffs and other Class members.

92.     Under Section 17203 of the Business & Professions Code, Plaintiffs and the other members of the Class are entitled to (a) restitution and disgorgement of all unjustly retained monies; (b) equitable relief; (c) pre- and post-judgment interest at the highest rate allowable by law; (d) payment of attorneys' fees and costs pursuant to Section 1021.5 of the California Code of Civil Procedure; and (e) any other relief this Court deems proper.

## FOURTH CLAIM FOR RELIEF

(Violation of California Civil Code Sections 2924.17 et al)

(Against All Defendants and Certain Doe Defendants)

93.     Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

94.     An entity is prohibited from recording or causing notices of default to be recorded unless "it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest."  Cal. Civ. Code 2924(a)(6). The Section further provides that "[n]o agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest."

95.     Specifically, prior to recording or filing documents in connection with a non-judicial foreclosure, involved parties must take care to review evidence that there is a valid default and a legal right to initiate foreclosure related proceedings. California Civil Code Section 2924.17 provides, in relevant portion:

(a) [A] notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure

proceeding shall be accurate and complete and supported by competent and reliable evidence.

(b) Before recording or filing any of the documents described in subdivision(a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

96.    Simply put, a Notice of Default must be accurate and complete and supported by competent and reliable evidence.  This includes insuring the existence of competent and reliable evidence showing that the party purporting to hold the beneficial interest actually has that beneficial interest and that the trustee carrying out the recording of related notices, and potentially going through with a foreclosure, is acting within the scope permitted through the beneficiary's authority.

97.    If a trustee's deed of sale has not yet been recorded, a borrower may bring an action for injunctive relief to enjoin the material violation of Section 2924.17. See Cal. Civ. Code § 2924.12(a)(1).

98.    Where a borrower prevails in obtaining injunctive relief, the borrower is also entitled to recover reasonable attorney's fees and costs.

99.    Defendant BONY (as trustee for the CWALT Trust) and Bayview are the purported beneficiary and current loan servicer, respectively, of Plaintiffs' and the class members loans and are subject to the provisions and requirements of Civil Code Sections 2924.17 and 2924.12.

100.   The notices of default and/or notices of sale issued in connection with Plaintiffs' and other Class members' loans were recorded and maintained as part of the public record by or on behalf of Defendant CWALT Trust by its authorized agents, Residential Credit Solutions, Inc., Ditech and Bayview.  At each step along the way, as Plaintiffs' loan file was transferred from loan servicer to loan servicer, Defendants failed to review those files because if they had they would have discovered the lack of

any evidence, much less competent and reliable evidence, to demonstrate Plaintiffs'
and the Class members loans were actually transferred to the CWALT Trust.

101.   In violation of Section 2924.17(a), the notices of default and/or notices of
sale recorded and maintained in connection with Plaintiffs' and other Class members'
loans were not accurate, complete or supported by competent and reliable evidence in
that, upon Plaintiffs' information and belief, they improperly identified the CWALT
Trust and/or BONY as trustee of said trust as the legal holders of the beneficial interest
when they were not.

102.   In violation of Section 2924.17(b), Defendants failed to ensure that it had
first reviewed competent and reliable evidence, including Plaintiffs' and other Class
members' loan information, to substantiate the CWALT Trust's ownership interest in
the loans and accordingly its ability to record Notices of Default or engage in other
foreclosure related activity on behalf of Defendant BONY.  All Defendants are liable
for this conduct and Plaintiffs and the Class members are entitled to injunctive relief
that shall remain in place and any trustee's sale enjoined until this court determines the
material violations of the Homeowner Bill of Rights have corrected and remedied and
recovery of their reasonable attorneys' fees and costs. *See* Cal. Civ. Code §§
2924(a)(6), 2924.12, 2924.17.

## **FIFTH CLAIM FOR RELIEF**

(To Set Aside and Rescind the Notices of Default)

(By Plaintiffs individually and on behalf of the class members against BONY, Bayview
and Certain Doe Defendants)

103.  Plaintiffs incorporate all preceding and succeeding allegations by
reference as if fully set forth herein.

104.  Defendants' recording and maintaining of Notices of Default against
Plaintiffs' and the Class members' properties was wrongful and without basis.  To
record a Notice of Default against a property, the entity which issues and records the

document must have the legal right to do so, including having been properly and actually assigned the rights and interests under the Deed of Trust.

105.    Section 2924(a)(6) of the California Civil Code provides that no entity shall record or cause a notice of default to be recorded unless "it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest."

106.    Section 2924.17(b) of the California Civil Code provides that "Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information."

107.    A simple review of the assignment chains and the loan files for Plaintiffs' and the Class members' loans would have revealed incurable gaps in the assignment chain. This would have informed Defendants that they lacked competent and reliable evidence demonstrating that they had the right, power or authority to record the NODs or otherwise commence foreclosure proceedings on Plaintiffs and the Class members' homes. As such, Defendants' recording of Notices of Default against Plaintiffs' and the Class members' properties was invalid and void *ab initio*.

108.    Defendants, prior to recording the NODs, did not ensure, as required by statute, that they had reviewed competent and reliable evidence substantiating their legal authority to record, either themselves or on their behalf, the Notices of Default.

109.    Accordingly, Plaintiffs hereby request, on behalf of themselves and the Class members, an order of this Court that the Notices of Default are legally void and should be ordered rescinded and set aside as invalid.

## SIXTH CLAIM FOR RELIEF

(To Set Aside and Rescind the Notice of Default)

(By Plaintiffs Individually against BONY, Bayview and Certain Doe Defendants)

110. Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

111. Section 2924.17(b) of the California Civil Code provides that "Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information."

112. A simple review of Plaintiffs' loan file would have revealed that there was no basis whatsoever for either Defendants' original recording of a Notice of Default against Plaintiffs' home on February 25, 2014, as the CWALT Trust was not the legal owner of the loan at that time, or its continued maintenance of that Notice in the public record once the loan was permanently modified. Thus the recording and continued maintenance of the NOD on Plaintiffs' home is invalid.

113. The permanent loan modification was executed by Ditech on October 12, 2016. The execution of this agreement rendered the prior Notice of Default recorded against Plaintiffs' home null and void. Indeed, as of the executory date of said permanent loan modification Plaintiffs were, as a point of fact, not in default under the terms of either their Promissory Note or Deed of Trust.

114. Plaintiffs have made every payment called for under the permanent loan modification since that date and are not currently in default under its terms. Despite being fully compliant with their modified loan, Defendants have nevertheless failed to rescind the Notice of Default recorded on or about February 25, 2014, but have instead allowed that Notice to remain part of the public record.

115.   If Defendants had reviewed their own loan files they would have seen that they lacked competent and reliable evidence upon which to maintain the recorded Notice of Default and would have immediately rescinded its issuance.

116.   Accordingly, Plaintiffs hereby request an order of this Court that the Notice of Default against their home is void and should be ordered rescinded and set aside as invalid.

### SEVENTH CLAIM FOR RELIEF

(Financial Elder Abuse)

(By Plaintiffs Against All Defendants and Certain Doe Defendants)

117.   Plaintiffs bring this claim individually on behalf of themselves only and incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

118.   Plaintiffs, at all times relevant hereto, were elders as defined by Section 15610.27 of the California Welfare & Institutions Code in that they were over the age of 65.

119.   Defendants herein used artifice, misrepresentations, and coercion to induce Plaintiffs to enter into a contract which obligated them to make payments to Defendants under terms and conditions different and less advantageous than what they were promised and entitled to in light of the representations made to them by the Defendants. Through the use of such coercive and unfair tactics Defendants took or appropriated, or assisted others in taking or appropriating money belonging to the Plaintiffs.

120.   As described above, on or about April 8, 2016, Ditech notified Plaintiffs that they were indeed eligible for a modification of their mortgage.  Ditech proposed a TPP for Plaintiffs, which required them to make three payments of $1,168.77 each to Ditech by May 1, June 1 and July 1, 2016, after which the loan modification would become permanent. Ditech also advised Plaintiffs of the terms under which they would receive a permanent loan modification if they successfully completed the TPP payments. These terms included that their permanent modification would start with an

interest rate of 2%, and that the loan would be amortized over 480 months (40 years) with monthly payments of $752.08.

121.   In reliance upon Ditech's representations, Plaintiffs obtained the necessary Court approval, dismissed Ingrid's Chapter 13 proceeding, and made each of the three TPP payments in full and on time as required by Ditech's letter. Notwithstanding, Ditech did not immediately provide the required permanent modification documentation to the Plaintiffs, nor advise Plaintiffs why it was not forthcoming. Worried that they would lose this opportunity for mortgage relief, Plaintiffs sent further payments of $1,168.77 to Ditech for August, September and October 2016 as they awaited implementation of the permanent modification agreement.

122.   When Ditech eventually provided the permanent loan modification agreement to the Plaintiffs, the terms did not match the terms of the TPP. Rather, the terms were materially different than what had been represented to the Plaintiffs and upon which terms they had not only advised the Bankruptcy Court that they were entering into a permanent loan modification (and obtained Court approval of same) but had also dismissed a bankruptcy petition. Instead of amortizing the loan over 480 months (40 years) as represented, the new agreement reduced the amortization period to just 19 years, had a higher principal balance and called for a large balloon payment in year 19.

123.   Plaintiffs repeatedly sought without success to have Ditech explain the changes to the offered modification agreement as well as have it honor the original terms proposed and performed by the Plaintiffs. Their frustrations and fears mounting, scared  that Ditech would withdraw the permanent loan modification and foreclose on their home, (a rational fear based upon the previous aggressive issuance and recording of Notices of Sale and the scheduling of multiple foreclosure sales on their home), and at their age frankly exhausted with the confrontation, Plaintiffs felt they had no choice. They reluctantly executed the modification paperwork as presented to them by Ditech, even though it was materially different from the loan modification promised to them

originally.  By doing so they became obligated to make payments to Defendants under terms and conditions different and less advantageous than what they were promised and entitled to in light of the representations made to them by the Defendants and as a consequence Defendants are thereby improperly taking or appropriating money belonging to Plaintiffs.

124.   In addition, Defendants are also taking or appropriating money belonging to Plaintiffs because as outlined above and despite their representations to the contrary, the CWALT Trust is not the true legal owners of Plaintiffs Promissory Note and Deed of Trust. Accordingly, they were not and are not entitled to any payments whatsoever from the Plaintiffs.

125.   As a consequence, Defendants appropriated, or assisted the other in taking, or appropriating from Plaintiffs personal property in the form of money and did so for a wrongful use or with the intent to defraud, or both.  Defendants had no right to collect payments from Plaintiffs because they had no rights in Plaintiffs' loan or Deed of Trust.

126.   Plaintiffs have been damaged as a direct result of the Defendants' actions.

127.   The aforementioned conduct of Defendants was achieved through misrepresentation, deceit, or concealment of material facts known to them with the intention on their part of depriving Plaintiffs of property or legal rights or otherwise causing injury and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

## EIGHTH CLAIM FOR RELIEF

(Breach of Contract/Promissory Estoppel)

(By Plaintiffs Against Ditech)

128.   Plaintiffs bring this claim individually and incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

129.   In April 2016, Plaintiffs and Ditech entered into an agreement whereby Ditech agreed to provide a permanent loan modification to Plaintiffs if they

successfully made three payments of $1,168.77 each under a proposed trial period plan ("TPP") for a three-month period beginning May 2016.   At the end of that period, Ditech further agreed that the new modification would start with an interest rate of 2%, and the new loan would be amortized over 480 months (40 years) with monthly payments of $752.08.

130.  Because Plaintiff Ingrid Phillips had a pending Chapter 13 Bankruptcy proceeding at the time, Ditech told the Plaintiffs in an April 12, 2016 telephone call that for the modification to take effect they would require approval of the modification by the Bankruptcy Judge and the bankruptcy petition would have to be dismissed. Plaintiffs were also told by Ditech in this same call that they would receive their final loan modification once the three trial payments had been made, and that other than a potentially slight difference in the remaining unpaid principal balance and minimal legal fees, the permanent modification would be consistent with and reflect the terms set forth in the TPP.

131.  In reliance upon Ditech's representations, Plaintiffs obtained the necessary Court approval, dismissed Ingrid's Chapter 13 proceeding, and made each of the three TPP payments in full and on time as required by Ditech. By doing so, Plaintiffs fully performed all their obligations, covenants and conditions required of them under the agreement, except to the extent any such obligations, covenants or conditions have been excused, prevented or waived by Defendants' acts and omissions.

132.  Ditech, however, did not immediately provide the required permanent modification documentation to the Plaintiffs, nor did it advise Plaintiffs why it was not forthcoming.   Concerned that they would lose this opportunity for mortgage relief, Plaintiffs sent another payment of $1,168.77 to Ditech for August 2016, and when they still heard nothing from Ditech they continued to pay the $1,168.77 to Ditech for another two months, for September and October 2016.

133.  Eventually Ditech did provide the permanent loan modification agreement to the Plaintiffs, however the agreement did not follow the terms of the

original TPP. Rather, it was materially different than what had been presented to the Plaintiffs and which had formed the basis for their advising the Bankruptcy Court that a loan modification had occurred and requesting the dismissal of Ingrid's Chapter 13 petition in that instead of amortizing the loan over 480 months (40 years) as represented, the new agreement reduced the amortization period in half to 19 years, had a higher principal balance and called for a large balloon payment in year 19.

134.  Plaintiffs repeatedly sought without success to have Ditech explain the changes to the offered modification agreement as well as have them honor the original terms proposed and accepted by the Plaintiffs. Their frustrations and fears mounting and deeply concerned that Ditech would withdraw the permanent loan modification and foreclose based on the previously recorded Notice of Default as well as their past aggressiveness in scheduling foreclosure sales (approximately 18 sale dates set and then postponed between August 2014 and April 2016, including one set for a date after Plaintiffs were already in a Trial Payment Plan), Plaintiffs felt they had a no choice but to execute the modification paperwork as presented to them by Ditech, even though it was materially different from the loan modification promised to them originally.

135.  Defendant Ditech breached their agreement with Plaintiffs by refusing to honor the terms of the original modification agreement presented to Plaintiffs and placing them in an untenable position where under duress they executed an agreement containing terms materially different terms than represented to them initially.

136.  Ditech made a clear and unambiguous promise to Plaintiffs that if they made timely payments during the trial period (TPP) they would receive a permanent loan modification with certain terms.

137.  Plaintiffs relied on Ditech's promises to their detriment including by dismissing Ingrid Phillips bankruptcy petition, making the three payments required under the TPP and then continuing to make TPP payments for several more months. As a direct and proximate result of Ditech's actions, and its refusal to honor its promises to

Plaintiffs as alleged herein, Plaintiffs have been damaged and it would be inequitable and unfair to Plaintiffs if Ditech's promises are not enforced.

### **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and the Class, pray for relief as follows:

A.    An order that this action may be maintained as a class action under applicable law, that Plaintiffs be appointed Class Representatives, and that Plaintiffs' counsel be appointed as counsel for the Class;

B.    On all claims for relief for compensatory damages;

C.    An award of statutory and actual damages as prescribed by the claims herein;

D.    For civil penalties pursuant to statute and/or reasonable attorneys' fees where provided for by law and according to proof

E.    An award of restitution and/or other equitable relief as prescribed by the claims herein;

F.    For injunctive relief preventing Defendants from proceeding with any foreclosure, foreclosure related activity or trustee's sale with respect to Plaintiffs or the Class members' properties;

G.    An award of the costs of suit; and

H.    Such other relief as this Court deems just and proper.

\ \ \
\ \ \
\ \ \
\ \ \
\ \ \
\ \ \
\ \ \
\ \ \
\ \ \

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury of all claims so triable.

ZIMMERMAN REED, LLP

Dated: June 8, 2018      By:   /s/ Christopher P. Ridout
Christopher P. Ridout
Caleb Marker
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
Tel. (877) 500-8780
Fax (877) 500-8781

David N. Lake
LAW OFFICES OF DAVID N. LAKE, APC
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Tel. (818) 788-5100
Fax. (818) 479-9990

*Attorneys for Plaintiffs*